**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION**

| | | |
|---|---|---|
| Crossroads Convenience, LLC, *as successor to TFL Associates LLC and assignee of Anderson Oil, Inc. and Varni, Enterprises, LLC,* | ) ) ) ) ) | Civil Action No.: 1:15-cv-02544-JMC |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER AND OPINION** |
| First Casualty Insurance Group, | ) ) | |
| Defendant. | ) ) ) | |

Before the court is a motion for summary judgment filed by Defendant First Casualty

Insurance Group ("First Casualty"). (ECF No. 54.) For the reasons that follow, the court **GRANTS**

the motion **IN PART** and **DENIES** it **IN PART**.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Many of the underlying facts are not in dispute.[1] Plaintiff Crossroads Convenience, LLC

("Crossroads") is the successor in interest to TFL Associates, LLC ("TFL"), which owned

premises located at 324 Main Street North in Allendale, South Carolina (the "premises"). TFL

leased the premises to Anderson Oil, Inc. ("Anderson Oil"), which operated a convenience store

there. Crossroads alleges that, pursuant to the terms of the lease, Anderson Oil procured an

insurance policy for the premises from Employers Mutual Casualty Company ("EMCC") that

"provided replacement cost coverage for the premises in the approximate amount of $669,000.00."

---

[1] First Casualty has denied a number of the allegations asserted in the operative complaint. (*Compare* ECF No. 26, *with* ECF No. 33.) However, the motion for summary judgment does not challenge many of these allegations, and the court accepts them for purposes of deciding the instant motion. In setting forth the facts, the court cites to the record only where useful.

(ECF No. 26 at 4).

In 2007, Anderson Oil subleased the premises to Varni Enterprises, LLC ("Varni"). The sublease provided that Varni would maintain insurance policies for the premises "in such amounts as are reasonably necessary to protect [Anderson Oil] and such amounts shall be at least for the fair market value of the buildings and equipment." (ECF No. 45-1 at 6.) Varni contracted with First Casualty, as an agent, to procure an insurance policy that would meet the requirements set forth in the sublease. (*See* ECF No. 26 at 4-5; ECF No. 33 at 2; *see also* ECF No. 1-2 at 45.) First Casualty procured for Varni an insurance policy for the premises from EMCC. Under the terms of the insurance policy, in the event of damage or loss to covered property, EMCC agreed to "[p]ay the value of the lost or damaged property" or to take equivalent action. (ECF No. 45-3 at 8.) The value of the covered property would be determined "[a]t replacement cost without deduction for depreciation," and "[i]f, at the time of loss," the coverage limit selected—here $420,000—was "80% or more of the full replacement cost of the property immediately before the loss," then the amount EMCC paid would be capped at the least of $420,000, the cost to replace the lost or damaged property with comparable property, or the amount actually spent on replacing or repairing or the lost or damaged property. (*Id.*; *see* ECF No. 45-2 at 11.) If, however, "at the time of loss," the $420,000 coverage limit was less than 80% of the full replacement cost of the property immediately before the loss," then the amount EMCC paid would be the greater of the actual cash value ("ACV") of the lost or damaged property, or a proportion of the cost to replace or repair the lost or damaged property, which proportion is equal to the ratio of $420,000 to 80% of the cost to repair or replace, but in any event would be capped at $420,000. (ECF No. 45-3 at 8.)

On October 29, 2011, the convenience store located on the premises was destroyed by fire. On January 13, 2012, Varni executed a sworn statement in proof of loss that it submitted to EMCC,

as required by the insurance policy. (*See* ECF No. 45-6; ECF No. 45-3 at 8-10.) In it, Varni stated that the estimated replacement cost of the building was $767,653.21, that the insurance coverage limit needed to meet the 80% mark was thus $614,122.57, that the coverage limit in the policy was $420,000, that the ACV of the building was $498,974.59, that the total ACV of loss and damage was $317,027.71, and that, after its $35,000 deductible, Varni claimed $282,027.71 under the insurance policy. (*See* ECF No. 45-6 at 2-3.) EMCC paid Varni $282,027.21 on January 18, 2012 (ECF No. 45-7), and stamped Varni's sworn statement in proof of loss as received on January 19, 2012 (ECF No. 45-6).

On October 20, 2014, Anderson Oil and TFL filed a complaint against Varni, First Casualty, and EMCC in the Court of Common Pleas for Allendale County, South Carolina. (*See* ECF No. 1-2 at 1-14.) The complaint alleged that Varni had placed a special trust and confidence in First Casualty to select the proper insurance policy to meet the requirements of the sublease; that Varni had informed First Casualty that the policy would need to protect Anderson Oil's interest in the premises and cover an amount at least equal to the fair market value ("FMV") of the premises; that First Casualty was aware that Anderson Oil had insured the premises for a replacement value of approximately $669,000; and that Varni had reasonably relied on First Casualty's selection of insurance policy. (*See id.* at 3-4) The complaint further alleged that First Casualty's selection of a policy with a coverage cap of $420,000 and a provision that covers less than the full amount of property loss or damage if the cap fails to meet the 80% percent mark rendered the premises "significantly underinsured." (*Id.* at 5.) The complaint asserted seven causes of action again First Casualty, including for breach of contract, negligence, negligent misrepresentation, promissory estoppel, constructive fraud, breach of fiduciary duty, and equitable indemnity. (*See id.* at 6-13.) Each cause of action asserted, under different theories, that First

Casualty was liable to Varni and, for this reason, was also liable to TFL and Anderson Oil as real parties in interest or "equitable subrogees." (*See id.*) In the breach of contract and promissory estoppel causes of action, the complaint also asserted that First Casualty was directly liable to Anderson Oil and was therefore also liable to TFL as a real party in interest or equitable subrogee.

On May 14, 2015, Varni assigned to Anderson Oil any rights Varni may have against First Casualty arising in connection with the insurance policy in exchange for Anderson Oil's agreement not to execute any judgment against Varni arising from the pending litigation. (*See* ECF No. 1-1.) On June 12, 2015, Anderson Oil and TFL filed an amended complaint in state court (*see* ECF No. 1-2 at 51-64) that repeated the allegations of the first complaint verbatim except to specify the insurance policy number and to add a paragraph noting Varni's assignment of rights to Anderson Oil (*see id.* at 53, 55). Thereafter, on June 25, 2015, first Casualty filed a notice of removal to the district court. (*See* ECF No. 1.)

On August 21, 2015, Anderson Oil filed a motion to amend the complaint (ECF No. 19), which the court granted (ECF No. 25). The amended complaint names Crossroads as the sole plaintiff and does not name Varni as a defendant. (ECF No. 26.) The motion as well as the amended complaint explained that Crossroads, having recently purchased TFL, is named as a plaintiff in its capacity as TFL's successor in interest. (*See* ECF No. 19 at 1; ECF No. 26 at 1.) The motion along with supplemental filings also explained that, effective May 15, 2015, Anderson Oil assigned to Crossroads any rights Anderson Oil may have against First Casualty arising in connection with the insurance policy, including the rights Anderson Oil had been assigned by Varni, in exchange for Crossroads' agreement not to execute any judgment against Anderson Oil arising from the pending litigation. (*See* ECF No. 19 at 1; ECF No. 20; ECF No. 26 at 7.) Accordingly, as the motion explains, the amended complaint names Crossroads as a plaintiff not only in its capacity as TFL's

4

successor in interest but also in its capacity as assignee of Varni's and Anderson Oil's rights. (*See* ECF No. 19 at 1; ECF No. 26 at 1.)

The amended complaint restates nearly verbatim many of the allegations contained in the previous versions. To a large extent, many of the amendments are non-substantive and only reflect Crossroads' status as the sole plaintiff in the capacities as TFL's successor in interest and Varni's and Anderson Oil's assignee and Varni's deletion as a defendant. Beyond that, the amended complaint adds paragraphs alleging that First Casualty knew that TFL and Anderson Oil were third-party beneficiaries of Varni's and First Casualty's contract to procure an insurance policy and that Anderson was expected to assign its interests in the litigation to Crossroads. (ECF No. 26 at ¶ 17, 24.) Although the amended complaint contains the same seven causes of action against First Casualty that were asserted in prior versions of the complaint, the amended complaint drops the "equitable subrogee" language and, instead, simply asserts First Casualty is liable to Crossroads based on Crossroads' status as TFL's successor in interest and as Varni's and Anderson Oil's assignee. (*See id.* at 7-8, 10-18.) For each of the seven causes of action, the amended complaint asserts that First Casualty was liable to Varni and, for this reason, First Casualty is also liable to Crossroads, either because Varni is ultimately liable to Crossroads (*see id.* at 7 ([First Casualty] refused . . . to compensate Varni for the amount of coverage that [First Casualty] should have procured for Varni. As a result, Varni is now liable to Anderson Oil, wh[ich] is in turn liable to [Crossroads] as TFL's successor . . . .")) or because Varni ultimately assigned its rights against First Casualty to Crossroads (*see id.* at ¶¶ 29, 39, 49, 54, 59, 63, 70). In addition, for all but the breach of contract cause of action, the amended complaint alleges that First Casualty is directly liable to Anderson Oil and, for this reason as well, is liable to Crossroads, either because Anderson Oil is ultimately liable to Crossroads or because Anderson Oil assigned its rights to Crossroads.

(*See id.* at 10-18.) Lastly the amended complaint adds an eighth cause of action against First Casualty for quantum meruit, which asserts First Casualty is liable to Crossroads vis-à-vis Varni. (*See id.* at 18.)

Following the court's order granting the motion to amend the complaint, Varni filed a motion seeking to be dismissed with prejudice as a defendant on the ground that the amended complaint did not name Varni as a defendant and sought no recovery from Varni. (*See* ECF No. 32.) The court agreed and, on February 2, 2016, entered an order granting the motion to dismiss and dismissing Varni from the action with prejudice. (*See* ECF No. 36.)

On March 4, 2016, First Casualty filed the instant motion for summary judgment.[2] (*See* ECF No. 45.) In its motion, First Casualty advances three arguments supporting judgment in its favor. First, it argues that all the claims asserted against it in the amended complaint are barred by the three-year statute of limitations found in S.C. Code Ann. § 15-3-530 (1), (5) (2016). (*See id.* at 8-10.) In First Casualty's view, each of the eight causes of action against it are premised on its liability to Varni. (*See id.* at 6 & n.4.) Varni, First Casualty argues, was aware or should have been aware of any claim it had against First Casualty based on First Casualty's alleged failure to select an insurance policy with a higher coverage limitation at the latest by January 19, 2012, when Varni submitted to EMCC the sworn statement in proof of loss. (*See id.* at 4, 8-9.) Thus, under South Carolina's discovery rule, First Casualty contends that the limitations period commenced on January 19, 2012 (*see id.* at 8 (citing S.C. Code Ann. § 15-3-535 (2016); *RWE NUKEM Corp. v. ENSR Corp.*, 644 S.E.2d 730, 733 (S.C. 2007))), and that Varni's failure to bring an action

---

[2] EMCC, which had continued to be named as a defendant in the amended complaint (*see* ECF No. 26 at 1), filed a separate motion for summary judgment on March 23, 2016 (*see* ECF No. 54). However, Crossroads later stipulated to EMCC's dismissal from this action, and a decision on EMCC's motion for summary judgment is no longer necessary. (*See* ECF No. 61.)

asserting these claims against First Casualty within three years after January 19, 2012, bars Crossroads, as Varni's assignee, from bringing Varni's claims for the first time in its August 21, 2015 amended complaint, after the three-year period expired (*see id.* at 8-10).

Second, First Casualty argues that, because all the claims against it are premised not only on its liability to Varni but also on Varni's liability to Anderson Oil (which is in turn liable to Crossroads as TFL's successor in interest) (*see id.* at 10), Varni's dismissal from the action with prejudice extinguished any potential liability Varni could have to Crossroads, and, consequently, Crossroads cannot plausibly allege a cognizable injury to Crossroads flowing from First Casualty's actions allegedly injuring Varni (*see id.* at 11-12).

Third, First Casualty argues that all claims against it fail on their merits. (*See id.* at 12-14.) As First Casualty rightly points out, all eight claims against it are based on the allegation that it failed to procure an insurance policy for Varni that met the requirements for such a policy set forth in the sublease between Varni and Anderson Oil. (*See id.* at 12.) First Casualty emphasizes that the sublease required Varni to obtain insurance "'*for at least the* [*FMV*] *of the buildings and equipment*'" on the premises. (*Id.* (quoting ECF No. 45-1 at 6).) First Casualty points out that it has proffered evidence—in the form of the sworn statement in proof of loss and the $282,027.71 check from EMCC to Varni—demonstrating that the policy it procured covered the ACV of the damaged property. (*See id.*) It also points to numerous legal authorities positing that FMV and ACV are equivalents. (*See id.* at 12-13.) Accordingly, First Casualty argues that the only evidence available shows that it procured for Varni an insurance policy that met the sublease's requirement that the policy cover the premises' FMV and that, therefore, summary judgment in its favor on the merits is warranted. (*See id.* at 13-14.)

In response to First Casualty's statute of limitations argument, Crossroads points out that

many of its claims are asserted not solely based in Crossroads' capacity as Varni's assignee but also as Anderson Oil's assignee and that First Casualty has not asserted that claims brought by Crossroads vis-à-vis Anderson Oil's interest are time-barred. (*See* ECF No. 52 at 5-9.) Crossroads also argues that its equitable indemnification cause of action, as a claim sounding in equity, is not subject to the three-year statute of limitations on which First Casualty relies. (*See id.* at 9 (citing *Robinson v. Estate of Harris*, 705 S.E.2d 41, 48 (S.C. 2011)).) Crossroads further argues that the limitations period should be equitably tolled because Varni's pleadings were defective in that they failed to assert crossclaims against First Casualty and because extraordinary circumstances— Crossroads' inability to assert Varni's claims until Varni assigned its claims to Crossroads— prevented it from timely asserting the claims. (*See id.* at 10.)

In response to First Casualty's argument based on Varni's dismissal with prejudice, Crossroads appears to argue that its causes of action do not depend on Varni being held liable to Anderson Oil or TFL's successor. Instead, Crossroads asserts, many of its claims are also based on First Casualty's direct liability to Anderson Oil as a third-party beneficiary of the contract between First Casualty and Varni. (*See id.* at 8-9.) Because Anderson Oil assigned its interest in this litigation to Crossroads, including any interest in claims of First Casualty's direct liability to Anderson Oil, Crossroads appears to argue that the extinguishing of Varni's potential liability to Anderson Oil is irrelevant. (*See id.*)

In response to First Casualty's merits-based argument, Crossroads emphasizes that the sublease required Varni to procure a policy in amounts "'reasonably necessary *to protect* [*Anderson Oil*].'" (*See id.* at 2 (quoting ECF No. 45-1 at 6).) Crossroads points to its amended complaint, which alleges that, prior to the sublease, the premises were insured for approximately $669,000, to demonstrate that the policy chosen by First Casualty, with a $420,000 cap on

coverage, was not enough to protect Anderson Oil's interest. (*See id.* at 11.)

## II. LEGAL STANDARD

Summary judgment is appropriate when the materials in the record show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[I]n ruling on a motion for summary judgment, 'the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [its] favor.'" *Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1863 (2014) (per curiam) (brackets omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in its pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *See id.* at 324.

## III. ANALYSIS

As explained above, First Casualty seeks summary judgment on three grounds: the statute of limitations, Varni's dismissal with prejudice, and the merits of the claims. The court addresses each ground in turn.

### A. Statute of limitations

First Casualty contends that all eight causes of action against it in the amended complaint are barred by the three-year statute of limitations found in § 15-3-530(1), (5). Although there is

some argument over whether the statute of limitations applies to one of the causes of action and whether the limitations period should be equitably tolled, the court declines to consider these arguments with respect to the seven causes of action asserted against First Casualty in the amended complaint that were also asserted (with nearly the exact language as they are now asserted in the amended complaint) against First Casualty in the initial complaint filed by TFL on October 20, 2014. Assuming without deciding that each of these seven causes of action asserted in the amended complaint otherwise would be untimely because they were not brought by Varni or by Varni's assignee within the three-year period, the court nonetheless would deny summary judgment on this ground because all seven causes of action relate back to a timely filed complaint.

As an initial matter, the court notes that First Casualty has not argued, and nothing in the record suggests, that the initial October 20, 2014 complaint runs afoul of the statute of limitations. The court also notes that the amended complaint's substantive allegations and its seven causes of action at issue are nearly identical to those set forth in the initial complaint. Because the substantive allegations and causes of actions are nearly identical, the procedural rules which permit an amended complaint to relate back to the date the original complaint is filed and thereby avoid a statute of limitations defense are implicated. *See Freight Drivers & Helpers Local Union No. 557 Pension Fund v. Penske Logistics LLC*, 784 F.3d 210, 218 (4th Cir. 2015) ("Because the substantive allegations in the amended complaint were identical to those contained in the initial complaint, the requirements of relation back under [Fed. R. Civ. P.] 15(c) clearly apply."); *Wilkins v. Montgomery*, 751 F.3d 214, 225 (4th Cir. 2014) ("The proposed amended complaint in this case clearly meets the . . . requirement of . . . Rule 15(c)(1)(B) . . .because it [does not] alter the underlying causes of action"). Although Rule 15(c) "does not expressly treat the relation back of an amended complaint that changes *plaintiffs*," *Penske Logistics*, 784 F.3d at 219 (citing Fed. R.

Civ. P. 15 advisory committee's note to 1966 amendment), many courts permit relation back in such circumstances and apply the general principles of amendment and relation back under Rule 15, *see id.*; *see generally* 3 James Wm. Moore, *Moore's Federal Practice* § 15.19[3][f] (3d ed. 2016); 6A Charles Alan Wright et al., *Federal Practice and Procedure* § 1501 (3d ed. 2016). In the Fourth Circuit, an amendment to the complaint that adds a new plaintiff relates back as long as the "amended complaint concerns the same conduct, transaction, or occurrence set forth in the original pleading" and "'[a]s long as [the] defendant is fully apprised of [the] claim arising from [the] specified conduct and has prepared to defend the action'" because, in such circumstances, the "'defendant's ability to protect itself will not be prejudicially affected if a new plaintiff is added.'" *Penske Logistics*, 784 F.3d at 219 (emphasis omitted) (quoting 6A Wright et al., *supra*, § 1501).

Here, at least with respect to the seven causes of action asserted against First Casualty in both the initial and amended complaints, the only relevant amendment is the addition of Crossroads as a party in its capacity as Varni's assignee. For all practical purposes, such an amendment is the functional equivalent of adding a new plaintiff. *See Young v. Lepone*, 305 F.3d 1, 17 (1st Cir. 2002); *see also* 6A Wright et al., *supra*, § 1501. The court finds that the amended complaint concerns the same conduct, transaction, or occurrence set forth in the initial complaint, namely First Casualty's selection of an insurance policy that allegedly failed to meet the requirements of the sublease between Varni and Anderson Oil. Moreover, because the seven causes of action that appear in both the initial and amended complaints are nearly identical, First Casualty was fully apprised of the seven claims and would not be prejudiced by an amendment asserting the same claims by a new plaintiff or by an existing plaintiff in a new capacity, such as Crossroads in its capacity as Varni's assignee. Accordingly, the court concludes that these seven causes of action

relate back to the date the initial complaint was filed, October 20, 2014, and are therefore not barred by the statute of limitations.

However, the relation back analysis set forth in the preceding paragraphs does not apply to the eighth cause of action for quantum meruit that is asserted against First Casualty in the amended complaint. This new cause of action did not appear in the previous versions of the complaint and was first asserted in the amended complaint. Generally, "an amendment that seeks to add a new plaintiff who asserts an entirely different claim will not relate back." 6A Wright et al., *supra*, § 1501. Although "several courts have held that an amendment by which plaintiff seeks to add a claim in another capacity can relate back," *id.*, the court does not believe that this particular exception applies here. The cases in which courts permit a claim added by a plaintiff in a newly asserted capacity to relate back to the date on which a previous complaint was filed involve circumstances in which the defendant had reasonable notice that the capacity under which the new claim is asserted is one that the plaintiff held at the time the initial complaint was filed. *See id.* § 1501 & nn.13-14. Here, nothing in the record demonstrates that either of the plaintiffs in the initial complaint could have asserted claims on Varni's behalf prior to Varni's assignment of its rights to Anderson Oil on May 14, 2015, nearly seven months after the initial complaint was filed and more than three years after Varni knew or should have known of the basis for potential claims against First Casualty, *see infra*. Thus, the court determines that First Casualty lacked reasonable notice of a potential quantum meruit claim brought on Varni's behalf, which would be necessary for that claim to relate back to the filing of the initial complaint.

Having concluded that the quantum meruit claim is not afforded the benefit of relation back to the date of the initial complaint's filing, the court must confront squarely whether the claim is barred by the statute of limitations. Under South Carolina law, quantum meruit claims are subject

to § 15-3-530(1)'s three-year statute of limitations. *See Wells Fargo Bank v. Carter*, No. 9:14-127-SB, 2014 WL 11034776, at *2 (D.S.C. July 22, 2014); *Magwood v. Heritage Tr. Fed. Credit Union*, No. 2:09-2751-DCN-BM, 2010 WL 4604661, at *4 (D.S.C. June 4, 2010), *adopted by Magwood*, 2010 WL 4622454 (Nov. 4, 2010); *see also Brown v. Goodman Mfg. Co., L.P.*, No. 1:13-cv-03169-JMC, 2015 WL 1006319, at *7 (D.S.C. March 5, 2015) ("An action for unjust enrichment is governed by a three-year statute of limitations [under ] § 15–3–530(1)."); *Wellin v. Wellin*, No. 2:13-cv-1831-DCN, 2014 WL 234216, at *3 (D.S.C. Jan. 22, 2014) ("Under South Carolina law, . . . unjust enrichment claims are governed by a three-year statute of limitations."); *Barnes v. Johnson*, 742 S.E.2d 6, 10 (S.C. Ct. App. 2013) ("The South Carolina Supreme Court has explained that quantum meruit is a remedy for unjust enrichment." (citing *Columbia Wholesale Co. v. Scudder May N.V.*, 440 S.E.2d 129, 130 (1994))). The claim is also subject to the discovery rule, under which "'the statute of limitations only begins to run from the date the injured party either knows or should know, by the exercise of reasonable diligence, that a cause of action exists for the wrongful conduct.'" *Brown*, 2015 WL 1006319, at *7 (quoting *True v. Monteith*, 489 S.E.2d 615, 616 (S.C. 1997)).

Here, Crossroads does not dispute First Casualty's assertion, supported by evidence, that Varni knew or should have known by January 19, 2012, the basis for any potential claim it had against First Casualty based on the allegedly inadequate insurance policy that First Casualty procured. Accordingly, the court finds that, by no later than January 19, 2012, Varni knew or should have known by the exercise of reasonable diligence that the cause of action for quantum meruit now raised in the amended complaint existed. *See* Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact . . . , the court may . . . consider the fact undisputed for purposes of the motion."). Thus, the limitations period for bringing the quantum

meruit claim commenced on January 19, 2012, and expired three years later. Varni failed to bring the claim within the limitations period, and Crossroads' attempt, as an assignee, to raise the claim now is to no avail. *See Young*, 305 F.3d at 17 ("[A]n assignee cannot maintain a claim in the face of a limitations defense that would have trumped the same claim had it been brought by the assignor. . . . Were the law otherwise, the efficacy of a limitations defense could be destroyed by the simple expedient of assigning the claim in question to a party who already had sued the defendant.").

Crossroads argues, however, that the limitations period should be equitably tolled. South Carolina law permits a limitations period to be equitably tolled rarely and under limited and exceptional circumstances. *See Hooper v. Ebenezer Senior Servs. & Rehab. Ctr.*, 687 S.E.2d 29, 33 (S.C. 2009). The plaintiff bears the burden of proof on the issue of equitable tolling. *Id.* at 32. Crossroads offers two grounds to apply equitable tolling to the circumstances of this case.

First, Crossroads notes that equitable tolling may be available when a plaintiff has actively pursued its judicial remedies by filing a timely, albeit defective, pleading. *See id.* at 33 (citing *Abbott v. State*, 979 P.2d 994, 998 (Alaska 1999)). Crossroads contends that Varni's circumstances fit this basis for equitable tolling as Varni, then a defendant, filed a timely answer to the initial complaint, but the answer was defective in that it failed to assert crossclaims against First Casualty. The court disagrees. In formulating this particular basis for equitable tolling, *Abbott*, upon which *Hooper* relied, referred specifically to *Burnett v. New York Central Railroad Co.*, 380 U.S. 424 (1965). In *Burnett*, the Supreme Court concluded that equitable tolling was appropriate when a plaintiff timely files and serves a complaint in state court that is later dismissed due to improper venue. *See* 380 U.S. at 427-28. Unlike the plaintiff in *Burnett*, Varni did not pursue judicial remedies for wrongs committed against it by First Casualty; instead, the pleading Varni filed was

14

an answer to a complaint that gave it more than sufficient notice of any claims it had against First Casualty, and Varni still did not seek judicial remedies against First Casualty. Further, unlike the plaintiff in *Burnett*, Varni's pleading was not defective merely because a technicality defeated an otherwise diligently-pursued claim; instead, Varni's pleading was "defective" in the sense that it did not pursue a claim against First Casualty at all. In the court's view, the record does not demonstrate that Varni was actively pursuing judicial remedies or that its timely filed pleading was hindered by the type of defect (technical or otherwise) for which equitable tolling is appropriate.

Second, Crossroads notes that equitable tolling may be available when extraordinary circumstances outside the plaintiff's control make it impossible to timely assert its claim. *See Hooper*, 687 S.E.2d at 33 (citing *Abbott*, 979 P.2d at 998). Crossroads contends that it was impossible for Anderson Oil or Crossroads to bring the claim on Varni's behalf until Varni assigned its claims to Anderson Oil on May 14, 2015, after the limitations period had already expired and that this constitutes extraordinary circumstances. Again, the court disagrees. Crossroads fails to demonstrate that a defendant's decisions to not file crossclaims against its co-defendant and to not assign the right to do so to a plaintiff that is suing the defendant is a circumstance that could rightly be called extraordinary; rather, such a situation appears to be, if not commonplace, at least not unordinary. Further, Crossroads fails to demonstrate that such circumstances were outside its or Anderson Oil's control. The mere fact that Anderson Oil eventually obtained the assignment shows that the ability to do so was, at least to some degree, within its control. After all, it takes two to tango. Yet, Crossroads offers no evidence or argument showing why Anderson Oil and TFL were unable to obtain the assignment from Varni during the limitations period. It is entirely possible that Varni flat out refused any offers in exchange for the

assignment, but Crossroads offers no evidence or argument to that effect. Aside from Crossroads'

failure to meet its burden to demonstrate that equitable tolling should apply here, the court doubts

that the mere failure of a potential plaintiff to assign its litigation rights to a would-be plaintiff,

alone, constitutes extraordinary circumstances sufficient for equitable tolling because such a

maneuver would provide too easy an end-run around statutes of limitations. *See Young*, 305 F.3d

at 17.

       In sum, although the court rejects the statute of limitations defense with respect to the seven

other claims, the court concludes that First Casualty is entitled to summary judgment on the

quantum meruit cause of action because it is barred by the statute of limitations.

## B. Varni's dismissal with prejudice

       Next, First Casualty argues that, because all of Crossroads' causes of action are premised

on Varni's liability to Anderson Oil and because Varni's liability to Anderson Oil has been

extinguished by Varni's dismissal from this action with prejudice, all of the causes of action must

fail as a matter of law. In other words, First Casualty envisions the amended complaint as asserting

a chain of liability, in which First Casualty is directly liable only to Varni, which is in turn liable

to Anderson Oil, which is in turn liable to Crossroads, as TFL's successor in interest. If one of the

links breaks—here, if Varni as a matter of law cannot be liable to Anderson Oil—then the chain

of liability connecting First Casualty to Crossroads fails, and Crossroads would be unable to prove

that any injury it incurred is legally traceable to First Casualty.

       Crossroads responds by contending that its amended complaint alleges not only that First

Casualty is liable to Varni, which is in turn liable to Anderson Oil, but also that First Casualty is

directly liable to Anderson Oil. In this way, Crossroads appears to argue, the purportedly broken

link between Varni and Anderson Oil is irrelevant because the link comprising First Casualty's

direct liability to Anderson Oil bypasses the link between Varni and Anderson Oil. In reply, First Casualty asks the court to reject any allegation that First Casualty could be directly liable to Anderson Oil because, it argues, the amended complaint fails to allege the requisite relationship between First Casualty and Anderson Oil needed to impose direct liability for the causes of action asserted. (*See* ECF No. 6 n.4; ECF No. 55 at 8-10.)

The court rejects this ground for summary judgment but, in so doing, declines to rely on Crossroads' reasoning and declines to determine whether the amended complaint contains sufficient allegations of the type of relationship between First Casualty and Anderson Oil needed to make First Casualty directly liable to Anderson Oil. The court takes a different tack and begins by noting that Varni was only dismissed in its capacity as a defendant. Thus, even assuming the soundness of First Casualty's chain-of-liability theory (and the court has its doubts), it would only defeat a theory of liability in which Varni is alleged to be liable to Anderson Oil (i.e., in which Varni is a defendant), and it would not defeat a theory of liability in which Varni is not alleged to be liable to Anderson Oil but, instead, is only asserting liability against First Casualty (i.e., in which Varni is a plaintiff). The parties' arguments here address Crossroads *qua* lessor to Anderson Oil and *qua* assignee of Anderson Oil's rights, but they do not address Crossroads *qua* assignee of Varni's rights. In addition to the two theories of liability discussed by the parties, Crossroads has also asserted that First Casualty is directly liable to Crossroads as an assignee of Varni's rights. Thus, even assuming that First Casualty is correct that Crossroads is barred from premising its case on Varni's liability to Anderson Oil or on First Casualty's liability to Anderson Oil, both of those arguably faulty links have been bypassed in that Crossroads has also premised its case on First Casualty's liability directly to Varni.

In sum, even assuming First Casualty is correct as a matter of law that Varni's dismissal

with prejudice cuts off one avenue for Crossroads to prove its case, the court cannot grant summary judgment to First Casualty because other avenues remain open.

## C. The merits

Lastly, First Casualty argues that all of the causes of action against it must fail as a matter of law because, on the merits, the insurance policy it procured for Varni met the requirements of the sublease between Varni and Anderson Oil. The sublease stated: "[Varni] will maintain . . . insurance policies . . . in such amounts as are reasonably necessary to protect [Anderson Oil,] and such amounts shall be for at least the [FMV] of the buildings and equipment." (ECF No. 45-1 at 6.) First Casualty presented evidence that the insurance policy it procured covered the ACV of the damaged property and pointed to legal authority for the proposition that FMV and ACV are equivalents. In response, Crossroads points to the amended complaint's allegation that First Casualty knew or should have known that, prior to the sublease, Anderson Oil had procured an insurance policy covering the premises for up to $669,000, substantially more than the $420,000 policy that First Casualty procured for Varni.

For purposes of deciding this motion, the court assumes from the outset, as the parties seem to do, that the language of the sublease indirectly imposed some sort of duty on First Casualty to procure an insurance policy that met the requirements of the sublease as set forth in the sentence quoted in the preceding paragraph. Thus, the court's analysis begins with the language of the sublease's operative sentence. The sentence contains two clauses both delineating the policy amounts that First Casualty was to procure, and, although each party emphasizes the more favorable clause, neither party attempts to offer a construction that gives each clause full effect. *See Hardee v. Hardee*, 558 S.E.2d 264, 267 (S.C. Ct. App. 2001) ("In construing a contract . . . [a] court must consider the contract in its entirety and employ a construction that gives effect 'to the

whole instrument and to each of its various parts and provisions.'" (quoting *Yarborough v. Phoenix Mut. Life Ins. Co.*, 225 S.E.2d 344, 349 (1976).)). First Casualty emphasizes the clause stating that the policy amount must be for at least the FMV of the property and appears to argue that this is the only requirement stated in the operative sentence. Crossroads, on the other hand, emphasizes the clause stating that the policy must be in such amount as reasonably necessary to protect Anderson Oil's interest and appears to argue that this is the only requirement stated in the operative sentence.

In the court's view, the operative sentence plainly and unambiguously imposes two requirements on the amount of insurance coverage: the coverage must be in an amount reasonably necessary to protect Anderson Oil's interest *and* must be for at least the FMV of the buildings and equipment. These clauses operate together in that the former provides a potential range of coverage amounts and the latter provides a floor. In other words, the first clause requires Varni to obtain coverage in an amount reasonably necessary to protect Anderson Oil and that amount conceivably could be above or below the FMV of the buildings and equipment on the premises; however, the second clause provides that, if the amount specified by the first clause happened to be below the FMV of the buildings and equipment, Varni nonetheless would be required to obtain coverage that, at a minimum, equaled the FMV of the buildings and equipment. This view is strongly suggested by the sentence's use of the conjunction "and" to join the two clauses, signifying that there are two requirements as to the amount of coverage. It is also strongly suggested by the use of the phrase "at least" to introduce the second clause but not the first clause, which signifies that the amount required may be more, but cannot be less, than the FMV of the buildings and equipment, while also signifying that the amount reasonably necessary to protect Anderson Oil would not be sufficient if that amount fell below the FMV of the buildings and equipment. Most importantly, the court's construction gives full effect to both clauses of the sentence when the

parties' constructions fail to do so. If First Casualty were correct that the only requirement was that the coverage amount meet the FMV of the buildings and equipment, then the language stating that the coverage be in an amount as reasonably necessary to protect Anderson Oil would be meaningless and superfluous. Likewise, if Crossroads were correct that the only requirement was that the coverage be in such amount as reasonably necessary to protect Anderson Oil, then the language stating that the coverage amount must be for at least the FMV of the buildings and equipment would be meaningless and superfluous.

First Casualty's argument in support of summary judgment on the merits is premised on the assertion that the policy it selected met one of the requirements as to the amount of coverage, namely the requirement that the coverage amount be for at least the FMV of the buildings and equipment. Even assuming First Casualty is correct on this point,[3] the court would not grant summary judgment on the merits because First Casualty has failed to demonstrate that no genuine dispute of material fact remains as to whether the policy it selected met the other requirement that the coverage be in an amount as reasonably necessary to protect Anderson Oil. At a minimum, to show that there is no genuine dispute regarding this requirement, First Casualty would have to (a) provide evidence as to what amount of coverage was reasonably necessary to protect Anderson Oil and (b) show that the policy it procured met this requirement. First Casualty has provided no

---

[3] Viewing the evidence in the light most favorable to Crossroads, *see S.B. ex rel. A.L. v. Bd. of Educ.*, 819 F.3d 69, 74 (4th Cir. 2016), the court doubts the evidence provided by First Casualty demonstrates that the policy it selected satisfied the requirement to insure in an amount for at least the FMV of the buildings and equipment. The sworn statement in proof of loss lists the ACV of the property at the time of loss as $498,974.59 and lists the ACV of the total *loss* to the property as $317,027.71. (*See* ECF No. 45-6.) Even accepting that ACV and FMV are equivalents, the court could readily infer from the only evidence First Casualty proffers on the issue that the ACV of the buildings and equipment was more than the $420,000 amount of coverage to which the policy First Casualty selected was limited.

evidence regarding what amount of coverage was reasonably necessary to protect Anderson Oil,[4] and, therefore, cannot show that the policy it procured met this requirement. Accordingly, genuine disputes remain as to whether the policy First Casualty procured for Varni met the requirements of the sublease, and First Casualty is not entitled to judgment on the merits as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, First Casualty's motion for summary judgment (ECF No. 45) is **GRANTED IN PART**, only to the extent that the court **GRANTS** First Casualty summary judgment on Crossroads' quantum meruit cause of action (ECF No. 26 at ¶¶ 71-75), and is **DENIED IN PART** in all other respects.

**IT IS SO ORDERED**.

J. Michelle Childs

United States District Court Judge

March 27, 2017
Columbia, South Carolina

---

[4] Crossroads attempts to show that the coverage amount reasonably necessary to protect Anderson Oil was more than the coverage amount First Casualty procured by pointing to the allegation in its amended complaint that Anderson Oil, prior to the sublease, obtained insurance in the amount of $669,000. First Casualty correctly argues that, once First Casualty adduces evidence on the issue, Crossroads may not rely on the allegations in its amended complaint to create a genuine dispute. *See Celotex Corp.*, 477 U.S. at 324. However, Crossroads is under no obligation to point at countervailing evidence until First Casualty, as the movant, meets its initial burden of demonstrating (by adducing evidence or otherwise) that there is no genuine dispute as the amount of coverage reasonably necessary to protect Anderson Oil. *See id.* at 323. Because First Casualty has not met its initial burden, Crossroads' reliance on the allegations of the amended complaint rather than on evidence it has adduced is irrelevant at this juncture.