# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | |
|---|---|
| Crossroads Convenience, LLC, as successor to TFL Associates, LLC, and assignee of Anderson Oil Company, Inc., <br><br> Plaintiff, <br> v. <br><br> First Casualty Insurance Group, Inc., <br><br> Defendant. | Civil Action No.: 1:15-cv-02544-JMC <br><br><br> **ORDER AND OPINION** |

Plaintiff Crossroads Convenience, LLC ("Crossroads"), as successor to TFL Associates, LLC ("TFL"), and assignee of Anderson Oil Company, Inc. ("Anderson Oil"), filed the above-captioned action against Defendant First Casualty Insurance Group, Inc. ("First Casualty") alleging claims for breach of contract, negligence, negligent misrepresentation, promissory estoppel, constructive fraud, breach of fiduciary duties, equitable indemnity and quantum meruit in the context of an insured-insurer relationship. (ECF No. 26 at 7 ¶ 25–8 ¶ 29 & 10 ¶ 34–18 ¶ 75.)

This matter is before the court on First Casualty's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 108.) Crossroads opposes the Motion in its entirety. (ECF No. 110.) For the reasons set forth below, the court **GRANTS** First Casualty's Motion for Summary Judgment.

## I. RELEVANT BACKGROUND TO PENDING MOTION

Crossroads is the successor in interest to TFL, which owned premises located at 324 Main Street North in Allendale, South Carolina (the "premises"). TFL leased the premises to Anderson Oil, which operated a convenience store there. Beginning on August 1, 2007, Anderson Oil subleased the premises to Varni Enterprises, LLC ("Varni"). (ECF No. 108-1 at 2

¶ 3; *see also* ECF No. 108-2 at 2.) The sublease provided that Varni would maintain insurance policies for the premises "in such amounts as are reasonably necessary to protect [Anderson Oil] and such amounts shall be at least for the fair market value of the buildings and equipment." (ECF No. 108-2 at 6.)

In the summer of 2009, Varni contracted with First Casualty, as an agent, to procure an insurance policy that would meet the requirements set forth in the sublease for policy period July 2009 to July 2010. (*See* ECF No. 108-1 at 2 ¶ 4; *see also* ECF No. 108-5 at 2 ¶ 3.) Varni's principal, P.J. Patel, gave First Casualty's agent, Gary Kunce, explicit instructions that the limit of any insurance policy should be set at $400,000.00 for each insured location. (ECF No. 108-5 at 2 ¶ 3; ECF No. 108-7 at 4:23–5:23.) Kunce was not provided a copy of the lease between Varni and Anderson Oil and "was never asked to interpret the lease or opine on Varni's insurance obligations under the lease." (ECF No. 108-5 at 3 ¶ 5; ECF No. 110-1 at 5:14:4–25.)

As a result of Patel and Kunce's interaction, First Casualty procured for Varni from Employers Mutual Casualty Company ("Employers Mutual") an insurance policy on the premises numbered 4W1-61-92-10 (ECF No. 108-8) for the period July 1, 2009 to July 1, 2010. (*See* ECF No. 108-1 at 2 ¶ 4; *see also* ECF No. 108-5 at 2 ¶ 3.) In September 2009, Anderson Oil was added to the policy as an additional insured. (ECF No. 108-5 at 3 ¶ 6; ECF No. 108-9 at 2.) Thereafter, "Varni purchased coverage from Employers Mutual in 2010–2011and 2011–2012, through First Casualty."[1] (*See* ECF No. 108-1 at 2 ¶ 4; *see also* ECF No. 108-5 at 2 ¶ 3.) In 2011, Employers Mutual automatically increased to $420,000.00 the limit on the policy for the premises "and advised First Casualty that the limits increase was non-negotiable." (ECF No. 108-5 at 3 ¶ 8.)

Under the terms of the insurance policy, in the event of damage or loss to covered

---

[1] The policy for these years was numbered 4W1-61-92-11. (ECF No. 108-16.)

property, Employers Mutual agreed to "[p]ay the value of the lost or damaged property" or to take equivalent action. (ECF No. 108-8 at 46.) "The policy contained an 80% co-insurance clause under which the insured would be penalized if the property were not insured to at least 80% of its replacement value."[2] (ECF No. 108-5 at 3 ¶ 4.) Kunce explained the co-insurance clause to P.J. Patel, who asked [] no questions and appeared to understand [][the] explanation." (*Id.*)

On October 29, 2011, the convenience store located on the premises was destroyed by fire. (ECF No. 108-18 at 6.) On January 13, 2012, Varni executed a Sworn Statement in Proof of Loss (ECF No. 108-18 at 6) and submitted it to Employers Mutual, as required by the insurance policy. (*Id.*; *see also* ECF No. 45-3 at 7–8.) The proof of loss documents demonstrated that the estimated replacement cost of the convenience store building was $767,653.21, that the insurance coverage limit needed to meet the 80% mark was $614,122.57, that the coverage limit in the policy was $420,000.00, that the actual cash value ("ACV") of the building was $498,974.59, that the total ACV of loss and damage was $317,027.71, and that, after its $35,000.00 deductible, Varni was owed $282,027.71 under the insurance policy. (*See* ECF No. 108-18 at 2, 6.) Employers Mutual paid Varni $282,027.21 on January 18, 2012 (ECF No. 45-7), and stamped Varni's Sworn Statement in Proof of Loss as having been received on

---

[2] More specifically, the value of the covered property would be determined "[a]t replacement cost without deduction for depreciation," and "[i]f, at the time of loss," the coverage limit selected—$400,000.00 for 2009–2010 and 2010–2011, and $420,000.00 for 2011–2012 (*see* ECF Nos. 108-8 at 11, 108-15 at 10 & 45-2 at 11)—was "80% or more of the full replacement cost of the property immediately before the loss," then the amount Employers Mutual paid would be capped at the cost to replace the lost or damaged property with comparable property, or the amount actually spent on replacing or repairing the lost or damaged property. (ECF No. 108-8 at 46.) If, however, "at the time of loss," the coverage limit was less than 80% of the full replacement cost of the property immediately before the loss," then the amount Employers Mutual paid would be the greater of the actual cash value of the lost or damaged property, or a proportion of the cost to replace or repair the lost or damaged property, which proportion is equal to the ratio of the coverage limit to 80% of the cost to repair or replace, but in any event would be capped at the coverage limit. (ECF No. 108-8 at 47.)

3

January 19, 2012 (ECF No. 45-6).

On October 20, 2014, Anderson Oil and TFL filed a Complaint against Varni, First Casualty and Employers Mutual in the Court of Common Pleas for Allendale County, South Carolina. (ECF No. 1-2 at 1-14.) Anderson Oil and TFL alleged that Varni had placed a special trust and confidence in First Casualty to select the proper insurance policy to meet the requirements of the sublease; that Varni had informed First Casualty that the policy would need to protect Anderson Oil's interest in the premises and cover an amount at least equal to the fair market value ("FMV") of the premises; that First Casualty was aware that Anderson Oil had insured the premises for a replacement value of approximately $669,000; and that Varni had reasonably relied on First Casualty's selection of insurance policy. (*See id.* at 3 ¶ 13–4 ¶ 16.) Anderson Oil and TFL further alleged that First Casualty's selection of a policy with a coverage cap of $420,000.00 and a provision that covers less than the full amount of property loss or damage if the cap fails to meet the 80% percent mark rendered the premises "significantly underinsured." (*Id.* at 5 ¶ 17.) Anderson Oil and TFL asserted seven causes of action again First Casualty, including for breach of contract, negligence for breach of the duty to advise, negligent misrepresentation, promissory estoppel, constructive fraud, breach of fiduciary duty and equitable indemnity. (*See id.* at 6 ¶ 29–7 ¶ 33 & 8 ¶ 38–13 ¶ 73.) Each cause of action asserted, under different theories, that First Casualty was liable to Varni and, for this reason, was also liable to TFL and Anderson Oil as real parties in interest or "equitable subrogees." (*See id.*) In the breach of contract and promissory estoppel causes of action, Anderson Oil and TFL also asserted that First Casualty was directly liable to Anderson Oil and was therefore also liable to TFL as a real party in interest or equitable subrogee. (*See id.* at 6 ¶ 29–7 ¶ 33 & 11 ¶¶ 54–58.)

On May 14, 2015, Varni assigned to Anderson Oil any rights Varni may have had against

First Casualty arising in connection with the insurance policy in exchange for Anderson Oil's agreement not to execute any judgment against Varni arising from the pending litigation. (*See* ECF No. 1-1.) On June 12, 2015, Anderson Oil and TFL filed an Amended Complaint in state court (*see* ECF No. 1-2 at 51–64) that repeated the allegations of the first Complaint verbatim except to specify the insurance policy number and to add a paragraph noting Varni's assignment of rights to Anderson Oil (*see id.* at 53 ¶¶ 10, 11 & 55 ¶ 21). Thereafter, on June 25, 2015, First Casualty removed the matter to this court. (ECF No. 1.)

On August 21, 2015, Anderson Oil moved to amend the Amended Complaint (ECF No. 19), which the court granted on September 28, 2015. (ECF No. 25.) In the "Second" Amended Complaint, Crossroads named itself as the sole Plaintiff and did not name Varni as a Defendant.[3] (ECF No. 26.) The Second Amended Complaint restated nearly verbatim many of the allegations contained in the previous versions and contained the same seven causes of action against First Casualty that were asserted in prior versions of the Complaint.[4] However, in the

---

[3] The Motion as well as the Second Amended Complaint explained that Crossroads, having recently purchased TFL, is named as Plaintiff in its capacity as TFL's successor in interest. (*See* ECF Nos. 19 at 1 & 26 at 1 ¶ 1.) The Motion along with supplemental filings also explained that, effective May 15, 2015, Anderson Oil assigned to Crossroads any rights Anderson Oil may have against First Casualty arising in connection with the insurance policy, including the rights Anderson Oil had been assigned by Varni, in exchange for Crossroads' agreement not to execute any judgment against Anderson Oil arising from the pending litigation. (*See* ECF Nos. 19 at 1, 20 & 26 at 7 ¶¶ 22–24.) Accordingly, as the Motion explains, the Second Amended Complaint names Crossroads as Plaintiff not only in its capacity as TFL's successor in interest but also in its capacity as assignee of Varni's and Anderson Oil's rights. (*See* ECF No. 19 at 1; ECF No. 26 at 8 ¶ 29.)
[4] The seven original claims are for breach of contract, negligence, negligent misrepresentation, promissory estoppel, constructive fraud, breach of fiduciary duties and equitable indemnity. (ECF No. 26 at 7 ¶ 25–8 ¶ 29 & 10 ¶ 34–18 ¶ 70.) To a large extent, many of the amendments are non-substantive and only reflect Crossroads' status as the sole Plaintiff in the capacities as TFL's successor in interest and Varni's and Anderson Oil's assignee and Varni's deletion as Defendant. Beyond that, the Second Amended Complaint adds paragraphs alleging that First Casualty knew that TFL and Anderson Oil were third-party beneficiaries of Varni's and First Casualty's contract to procure an insurance policy and that Anderson Oil was expected to assign its interests in the litigation to Crossroads. (ECF No. 26 at 5–6 ¶ 17 & 7 ¶ 24.) Although the

Second Amended Complaint, Crossroads added an eighth cause of action against First Casualty for quantum meruit (*see* ECF No. 26 at 18 ¶¶ 71–75), which allegations contend that First Casualty is liable to Crossroads vis-à-vis Varni. (*See id.* at 18 ¶¶ 71–75.)

Following the court's order granting the Motion to Amend the Amended Complaint, Varni filed a Motion to Dismiss and/or for Judgment on the Pleadings (ECF No. 32) seeking to be dismissed with prejudice as Defendant on the ground that the Second Amended Complaint did not either name Varni as Defendant or seek any recovery from it. The court agreed and, on February 2, 2016, entered an Order granting the Motion to Dismiss and dismissing Varni from the action with prejudice. (ECF No. 36.)

On March 4, 2016, First Casualty filed its first Motion for Summary Judgment.[5] (ECF No. 45.) In its Motion, First Casualty advanced three arguments supporting judgment in its favor. First, it argued that all the claims asserted against it in the Second Amended Complaint are barred by the three-year statute of limitations found in S.C. Code Ann. § 15-3-530(1), (5)

---

Second Amended Complaint contains the same seven causes of action against First Casualty that were asserted in prior versions of the Complaint, the Second Amended Complaint drops the "equitable subrogee" language and, instead, simply asserts First Casualty is liable to Crossroads based on Crossroads' status as TFL's successor in interest and as Varni's and Anderson Oil's assignee. (*See id.* at 7 ¶ 25–8 ¶ 29, 10 ¶ 34–18 ¶ 75.) For each of the seven causes of action, Crossroads alleges that First Casualty was liable to Varni and, for this reason, First Casualty is also liable to Crossroads, either because Varni is ultimately liable to Crossroads (*see id.* at 7 ¶ 22 ([First Casualty] refused . . . to compensate Varni for the amount of coverage that [First Casualty] should have procured for Varni. As a result, Varni is now liable to Anderson Oil, wh[ich] is in turn liable to [Crossroads] as TFL's successor . . . .")) or because Varni ultimately assigned its rights against First Casualty to Crossroads (*see id.* at 8 ¶ 29, 11 ¶ 39, 13 ¶ 49, 14 ¶ 54, 15 ¶ 59, 16 ¶ 63 & 18 ¶ 70). In addition, for all but the breach of contract cause of action, Crossroads alleges in the Second Amended Complaint that First Casualty is directly liable to Anderson Oil and, for this reason as well, is liable to Crossroads, either because Anderson Oil is ultimately liable to Crossroads or because Anderson Oil assigned its rights to Crossroads. (*See id.* at 10 ¶ 34–18 ¶ 75.)

[5] Employers Mutual, which had continued to be named as Defendant in the Second Amended Complaint (*see* ECF No. 26 at 1), filed a separate Motion for Summary Judgment (ECF No. 54) on March 23, 2016. However, the parties later stipulated to Employers Mutual's dismissal from this action thereby resolving Employers Mutual's Motion for Summary Judgment. (*See* ECF No. 61.)

(2016). (ECF No. 45 at 8–10.) Second, First Casualty argued that, because all the claims against it are premised not only on its liability to Varni but also on Varni's liability to Anderson Oil (which is in turn liable to Crossroads as TFL's successor in interest) (*see id.* at 10), Varni's dismissal from the action with prejudice extinguished any potential liability Varni could have to Crossroads, and, consequently, Crossroads could not plausibly allege a cognizable injury to Crossroads flowing from First Casualty's actions allegedly injuring Varni (*see id.* at 11–12). Third, First Casualty argued that all claims against it fail on their merits. (*See id.* at 12–14.) Upon its review, the court entered an Order on March 27, 2017, only granting First Casualty's Motion as to the quantum meruit cause of action (*see* ECF No. 26 at 18 ¶¶ 71–75) and denying it "in all other respects." (ECF No. 78 at 21.)

Thereafter, on November 30, 2017, First Casualty filed the instant Motion for Summary Judgment asserting that it is entitled to summary judgment on the seven remaining claims against it "[b]ecause there is no evidence that First Casualty breached its sole duty–to procure coverage per its customer's request–or took on any additional duties." (ECF No. 108 at 2.) On December 15, 2017, Crossroads filed its Response to the Second Motion for Summary Judgment opposing the request, to which First Casualty filed a Reply in support of its Motion for Summary Judgment on December 22, 2017. (ECF Nos. 110, 111.)

## II. JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) based on Crossroads' allegations that there is complete diversity of citizenship between it[6] and First Casualty and Employers Mutual, who are allegedly both citizens of a state other than South

---

[6] Crossroads is a corporation organized under the laws of South Carolina with its principal place of business in South Carolina. (ECF No. 26 at 1 ¶ 1.) Crossroads' is the successor to TFL, a South Carolina corporation, and the assignee of Anderson Oil, another South Carolina corporation. (*Id.* ¶ 2 & at 2 ¶ 3.)

Carolina. (ECF No. 26 at 1 ¶ 1 & 2 ¶¶ 5, 6; *see also* ECF No. 1 at 4 ¶¶ 7, 9 & 10.) Moreover, the court is satisfied that the amount in controversy exceeds the sum of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of interest and costs. (ECF No. 26 at 5 ¶ 15 & 6 ¶ 19.)

### III. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249.

## IV. ANALYSIS

A. The Parties' Arguments

   *1. First Casualty*

In its Motion, First Casualty generally argues that all of Crossroads' causes of action depend on the existence of a duty to advise "as to what limits of coverage to purchase." (ECF No. 108 at 8.) First Casualty further argues it is entitled to summary judgment because such a duty does exist under South Carolina law. (*Id.* at 9 (citing *Houck v. State Farm Fire & Cas. Ins. Co.*, 620 S.E.2d 326, 329 (S.C. 2005) ("Absent an express undertaking to assume [] a duty [to advise an insured at the point of application], a duty can be impliedly created [] [based on] whether: (1) the agent received consideration beyond a mere payment of the premium, (2) the insured made a clear request for advice, or (3) there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on.") (citation omitted)).) In this regard, First Casualty asserts that it is entitled to summary judgment because (1) it did not breach its only duty "to procure the coverage requested by the customer" and (2) the record is devoid of evidence that it took on the additional duty of advising the "insured as to the scope of coverage, the limits of coverage, the availability or advisability of different types of coverage, or any other matters relating to insurance coverage." (ECF No. 108 at 1–2.)

In addition to the foregoing, First Casualty argues that each cause of action alleged by Crossroads specifically fails warranting the grant of summary judgment. First, First Casualty reiterates that without a duty to advise, which does not exist under South Carolina law, Crossroads cannot demonstrate the necessary prerequisite for its breach of contract and negligence for breach of the duty to advise claims. (*Id.* at 12–13.) First Casualty next asserts

9

that the record is devoid of evidence demonstrating any false representations to Varni and its reliance on such misrepresentations to support either a negligent misrepresentation claim or a fraud claim. (*Id.* at 14, 15.) First Casualty further asserts that the promissory estoppel claim fails because there is no evidence that it "unambiguously warranted and promised Anderson Oil and Varni that [] [First Casualty] would procure, and [] [Employers Mutual] would provide, insurance coverage in an amount that would adequately protect Anderson Oil's and Varni's interests." (*Id.* at 14 (referencing ECF No. 26 at 13 ¶ 51).) First Casualty then submits that a breach of fiduciary duty claim is unsustainable because under South Carolina law, "an insurance agent does not stand in a fiduciary relationship with his customer." (*Id.* at 15 (citing *Pitts v. Jackson Nat'l Life Ins. Co.*, 574 S.E.2d 502, 509 (S.C. Ct. App. 2002) ("[T]he sale of insurance is an arm's length commercial transaction, which does not give rise to a fiduciary relationship.")).) Finally, as to equitable indemnity, First Casualty asserts that the claim fails because Crossroads cannot show that either Varni or Anderson Oil as indemnitees are without fault for the loss. (*Id.* at 16 (citing *Walterboro Cmty. Hosp., Inc. v. Meacher*, 709 S.E.2d 71, 74 (S.C. Ct. App. 2011) ("[A] plaintiff asserting an equitable indemnification cause of action may recover damages if he proves: . . . (2) the indemnitee was exonerated from any liability for those damages; . . . .")).)

   2. *Crossroads*

Crossroads opposes the instant Motion for Summary Judgment arguing that First Casualty should be judicially estopped from claiming that it did not have any duty to advise because this argument was made in its First Motion for Summary Judgment. (ECF No. 110 at 2.) Additionally, Crossroads argues that because it has presented evidence that First Casualty's agent undertook to advise Varni's agent, there are genuine issues of material fact regarding

whether First Casualty "explicitly undertook to advise Varni."[7] (*Id.* at 6–9.)

B.  The Court's Review

   1. *Judicial Estoppel*

Crossroads asserts that judicial estoppel bars First Casualty from asserting that it did not have a duty to advise. (ECF No. 110 at 1–2.) The doctrine of judicial estoppel precludes a party from adopting a position that is in conflict with a position taken in the same or related litigation. *Hayne Fed. Credit Union v. Bailey*, 489 S.E.2d 472, 477 (S.C. 1997). The doctrine generally applies to statements of fact, and not inconsistent legal positions. *Id.* The purpose of the doctrine is to protect the integrity of the judicial process. *Id.* In order to determine whether judicial estoppel applies in a given case, courts look to three factors. "First the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation." *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996). "Second, the prior inconsistent position must have been accepted by the court." *Id.* "Finally, the party sought to be estopped must have intentionally misled the court to gain unfair advantage." *Id.* (internal quotations and citations omitted).

In support of its position, Crossroads generally contends that First Casualty "previously argued that it complied with a duty [to] provide sufficient insurance to Plaintiffs." (ECF No. 110 at 2.) However, Crossroads failed to provide any further argument regarding how the aforementioned factors are satisfied thus requiring application of judicial estoppel. Accordingly, the court does not find that First Casualty should be judicially estopped from asserting its arguments in the instant Motion regarding the duty to advise.

---

[7] The court observes that this point is the main thrust of Crossroads' opposition brief. (*See* ECF No. 110 at 6–9.) The evidence submitted in support of this point came expressly from the deposition testimony of First Casualty's agent, Kunce, and Crossroads' expert, Franklin Cannon. (*See* ECF Nos. 110-1 & 110-2.)

*2. Claims with a Duty of Care as an Element*

In its Motion, First Casualty primarily argues that the claims in the Second Amended Complaint fail because an insurer does not owe any duty to advise an insured under South Carolina law. In considering the merits of this argument, the most apparent issue with this position is that not all of Crossroads' claims have a duty of care as an element of the cause of action. Therefore, consistent with the foregoing observation, the court finds it appropriate to separate the claims in which a duty of care is an element from the claims in which a duty of care is not an element.

Crossroads' claims that have a duty of care as an element are negligence,[8] negligent misrepresentation,[9] and breach of fiduciary duty.[10] In opposing First Casualty's argument that these claims fail because an insurer does not have a duty to advise, Crossroads relies completely on testimony from its expert, Franklin Cannon, who opined that all insurance agents "have a duty to [] insureds to evaluate risk and to counsel them on proper coverage" and that "Kunce [actions] fell short of underwriting standards." (ECF No. 110-2 at 101:9–19 & 108:2–6.)

---

[8] To assert direct liability based on a negligence claim in South Carolina, a plaintiff must show that (1) defendant owed her a duty of care; (2) defendant breached this duty by a negligent act or omission; (3) defendant's breach was the proximate cause of her injuries; and (4) she suffered injury or damages. *Dorrell v. S.C. DOT*, 605 S.E.2d 12, 15 (S.C. 2004) (citation omitted). "Whether the law recognizes a particular duty is an issue of law to be determined by the court." *Jackson v. Swordfish Inv., L.L.C.*, 620 S.E.2d 54, 56 (S.C. 2005) (citation omitted).

[9] To establish liability for negligent misrepresentation, a plaintiff must show (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the representation; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation. *AMA Mgmt. Corp. v. Strasburger*, 420 S.E.2d 868, 874 (S.C. Ct. App. 1992).

[10] "To establish a claim for breach of fiduciary duty, the plaintiff must prove (1) the existence of a fiduciary duty, (2) a breach of that duty owed to the plaintiff by the defendant, and (3) damages proximately resulting from the wrongful conduct of the defendant." *RFT Mgmt. Co., LLC v. Tinsley & Adams LLP*, 732 S.E.2d 166, 173 (S.C. 2012) (citing *Moore v. Moore*, 599 S.E.2d 467 (S.C. Ct. App. 2004) (discussing the elements comprising a breach of fiduciary duty claim)).

Upon review, the court observes that "as a general rule, an insurance agent has no duty to advise an insured at the point of application, absent an express or implied undertaking to do so." *Houck v. State Farm Fire & Cas. Ins. Co.*, 620 S.E.2d 326, 329 (S.C. 2005). However, "[a]n implied undertaking may be shown if: (1) the agent received consideration beyond a mere payment of the premium, []; (2) the insured made a clear request for advice, []; or (3) there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on." *Trotter v. State Farm Mut. Auto. Ins. Co.*, 377 S.E.2d 343, 347 (S.C. Ct. App. 1988) (internal and external citations omitted). If an insurer undertakes to advise the insured, the "insurance agent or broker must exercise good faith, reasonable skill, care, and diligence." *Sullivan Co., Inc. v. New Swirl, Inc.*, 437 S.E.2d 30, 31 (S.C. 1993). "If, because of his fault or neglect, the agent fails to procure insurance, or does not follow instructions, or the policy issued is void, or materially deficient, or does not provide the coverage he undertook to supply, the agent is liable to his principal." *Id.* "It is the insured [] who bears the burden of proving the undertaking." *Trotter*, 377 S.E.2d at 347.

In consideration of the aforementioned caselaw, Crossroads' evidence fails to demonstrate that First Casualty either expressly or impliedly undertook to advise Varni resulting in a duty of care. First, Crossroads failed to submit either argument or caselaw to support a finding that Kunce's attempt to explain co-insurance to Varni's principal, P.J. Patel, operates as an express agreement by First Casualty to perform advisory services. Second, there is no evidence in the record showing that First Casualty was on notice that its advice regarding coverage was being sought and would be relied on. In this regard, P.J. Patel declared that he could not recall either (1) providing "First Casualty with a copy of the lease between Varni and

Anderson Oil before the loss in October 2011" or (2) engaging in "any further specific substantive communications between me (or any representatives of Varni) and any representatives of First Casualty." (ECF No. 108-1 at 2–3 ¶ 5.) Moreover, the opinion of Crossroads' expert, Franklin Cannon, "is insufficient in and of itself to create such a duty." *Estate of Anderson by Brown v Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, Civil Action No.: 3:17-00032-MGL, 2018 WL 1428497, at *5 (D.S.C. Mar. 22, 2018) (citing *Trotter*, 377 S.E.2d at 351 (holding in an insurance case "opinion testimony [that insurance agent had a duty to explain risks, coverage, and policy exclusions to the insured] could not create a duty to advise, which does not exist at law.")). Therefore, in this case, the court finds that Crossroads is unable to create a genuine dispute of material fact regarding whether First Casualty owed Varni a duty to advise. Accordingly, because Crossroads cannot prove an essential element of its claims for negligence, negligent misrepresentation and breach of fiduciary duty, First Casualty is entitled to summary judgment on these causes of action.

### 3. *Claims without Duty of Care as an Element*

The remaining claims in this action for breach of contract,[11] promissory estoppel,[12] constructive fraud[13] and equitable indemnity[14] do not have a duty of care as an element of the

---

[11] "To recover for a breach of contract, the plaintiff must prove: (1) a binding contract entered into by the parties; (2) a breach or unjustifiable failure to perform the contract; and (3) damage suffered by the plaintiff as a direct and proximate result of the breach." *Tomlinson v. Mixon*, 626 S.E.2d 43, 49 (S.C. 2006).

[12] The elements of promissory estoppel are: (1) the presence of a promise unambiguous in its terms; (2) reasonable reliance upon the promise by the party to whom the promise is made; (3) the reliance is expected and foreseeable by the party who makes the promise; and (4) the party to whom the promise is made must sustain injury in reliance on the promise. *Woods v. State*, 431 S.E.2d 260, 263 (S.C. Ct. App. 1993) (citation omitted).

[13] To establish constructive fraud all elements of actual fraud except the element of intent must be established. *O'Quinn v. Beach Assocs.*, 249 S.E.2d 734, 738 (S.C. 1978). Under South Carolina law, the elements of a cause of action for "fraud and deceit, based upon misrepresentation" include "(1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6)

14

causes of action. However, despite not having a duty of care as an element, each of these claims fails as a matter of law.

In support of its claims for breach of contract and promissory estoppel, Crossroads alleged in the Second Amended Complaint that First Casualty respectively contracted and/or promised to provide insurance coverage that would adequately cover the needs of Varni and Anderson Oil. (ECF No. 26 at 8 ¶¶ 26, 27 & 13 ¶ 51.) However, other than the allegations of the Second Amended Complaint, there is nothing in the record that demonstrates (1) the binding contract at issue, (2) the provision allegedly breached or (3) the unambiguous promise by First Casualty as it relates to the procurement of insurance. As a general matter, a plaintiff cannot defeat summary judgment by relying on "mere speculation." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). Accordingly, First Casualty is entitled to summary judgment on Crossroads claims for breach of contract and promissory estoppel.

As to its claim for constructive fraud, Crossroads' allegations reference an alleged breach of the duty of good faith and fair dealing. (*See* ECF No. 26 at 14 ¶ 56–15 ¶ 57.) Even though the court agrees that the duty of good faith and fair dealing can apply to contracts for insurance, *see, e.g., Carolina Bank & Tr. Co. v. St. Paul Fire & Marine Co.*, 310 S.E.2d 163, 165 (S.C. Ct. App. 1983), it is not clear how an alleged breach of the duty of good faith and fair dealing

---

the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; (9) the hearer's consequent and proximate injury." *Fisher v. Pelstring*, 817 F. Supp. 2d 791, 823 (D.S.C. 2011) (quoting *M.B. Kahn Constr. Co. v. S.C. Nat'l Bank of Charleston*, 271 S.E.2d 414, 415 (S.C. 1980)).

[14] "A party seeking to recover under a theory of equitable indemnification must prove: '(1) the indemnitor is liable for causing plaintiff's damages; (2) the indemnitee was exonerated from any liability for those damages; and (3) the indemnitee suffered damages as a result of plaintiff's claims against it which were eventually proven to be the fault of the indemnitor.'" *Owens v. Hertz Equip. Rental Corp.*, C.A. No. 6:09-cv-01534-JMC, 2010 WL 11534155, at *2 (D.S.C. Oct. 27, 2010) (quoting *Vermeer Carolina's Inc. v. Wood/Chuck Chipper Corp.*, 518 S.E.2d 301, 307 (S.C. Ct. App. 1999)).

satisfies the elements of a constructive fraud claim.[15] In this regard, Crossroads fails to suggest what evidence, if any, in the record supports its claim for constructive fraud. Therefore, the court grants First Casualty's Motion for Summary Judgment as to this claim.

In its final remaining claim for equitable indemnity, Crossroads asserts that First Casualty's actions made Varni and Anderson Oil liable to Crossroads for damages. (ECF No. 26 at 17 ¶ 65–18 ¶ 70.) "Indemnity is that form of compensation in which a first party is liable to pay a second party for a loss or damage the second party incurs to a third party." *Vermeer*, 518 S.E.2d at 305 (citation omitted). "Ordinarily, if one person is compelled to pay damages because of negligence imputed to him as the result of a tort committed by another, he may maintain an action over for indemnity against the person whose wrong has thus been imputed to him." *Id.* (citation omitted). "This is subject to the proviso that no personal negligence of his own has joined in causing the injury." *Id.* (citation omitted). "A party opposing a summary judgment motion on an indemnification claim, even though the motion is based primarily upon the complaint, has the two-fold burden of demonstrating a genuine issue of material fact regarding the opposing party's lack of liability and a genuine issue of material fact regarding the moving party's liability." *Id.* at 307 (citations omitted).

Upon consideration of the evidence submitted by the parties, the court agrees with First Casualty that the evidence of record– when viewed in the light most favorable to Crossroads as the nonmoving party–demonstrates without dispute that Varni, through its principal P.J. Patel, has not been exonerated from being at fault in causing its own damages and those suffered by

---

[15] "Under South Carolina law, 'there exists in every contract an implied covenant of good faith and fair dealing.'" *Creamer v. Anderson Cty. Sheriff's Office*, C/A No. 8:13-cv-03405-JMC, 2014 WL 3889118, at *4 (D.S.C. Aug. 7, 2014) (quoting *Williams v. Riedman*, 529 S.E.2d 28, 36 (S.C. 2000)). However, "the implied covenant of good faith and fair dealing is not an independent cause of action separate from the claim for a breach of contract." *Id.* (quoting *RoTec Servs., Inc. v. Encompass Servs., Inc.*, 597 S.E.2d 881, 884 (S.C. Ct. App. 2004)).

Anderson Oil as it relates to the procurement of insurance coverage on the premises. Because of this evidence, First Casualty is entitled to summary judgment on Crossroads' cause of action for equitable indemnity.

## V. CONCLUSION

Upon careful consideration of the entire record and the parties' arguments, the court hereby **GRANTS** First Casualty Insurance Group, Inc.'s Motion for Summary Judgment. (ECF No. 108.)

**IT IS SO ORDERED**.

*J. Michelle Childs*
United States District Judge

June 13, 2018
Columbia, South Carolina